* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs and oral arguments before the Full Commission. The appealing parties have shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. The defendant-employer was insured for workers' compensation by The Hartford from August 1, 1993 through August 1, 1996, and by Royal 
Sunalliance Insurance Company from August 1, 1996 through the plaintiff's last date of employment with the defendant-employer.
4. The plaintiff's average weekly wage will be determined from a Form 22 that is to be submitted by the defendants in this matter for all relevant times herein.
5. The issues to be determined from this hearing are as follows:
 a) Whether the plaintiff developed an occupational disease as a direct result of his employment with the defendant-employer?
 b) If so, what, if any, benefits is the plaintiff entitled to recover under the North Carolina Workers' Compensation Act?
6. The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties is hereby incorporated by reference herein. *Page 3 
 * * * * * * * * * * *
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff, who died after this matter was heard before the Deputy Commissioner, was born on August 11, 1939. He graduated from high school and completed Barber College in Winston-Salem, North Carolina. The plaintiff operated a barber shop in Spruce Pine until September 1979. Thereafter, he worked for Southern Seating Company installing church furniture until 1986. The plaintiff was next employed by Kivetts Company until August 1988, again installing church furniture. He began working for the defendant-employer on September 2, 1988, as a fine grind operator.
2. The plaintiff worked at the Feldspar Plant in which the defendant-employer ground rock to a fine, flour-like consistency. When the material came to the fine grind machines, it was the consistency of sand. The material contained feldspar/silica. The plaintiff stated that the material looked like flour when it had come through the fine grind machines, and most people could not tell it from flour.
3. The plaintiff operated 4 machines from 11 p.m. to 7 a.m. His job duties included oiling the machines, patching holes that developed in the processing of the material, checking dials, getting samples of the material, changing bins, and blowing machines.
4. The area in which the plaintiff worked was dusty. The defendant-employer provided the plaintiff with disposable masks for protection; however, these masks would become clogged by the dust, which made it difficult for the plaintiff to breathe while working. Thus, the plaintiff did not use the mask on a regular basis. *Page 4 
5. Three or four times per shift, the plaintiff would climb several flights of steep stairs to a collection bin located above the milling machines to obtain samples of the flour-like material and complete tests to determine the percentage of silica it contained. In order to get the sample, the plaintiff would have to catch the ground material in a container after opening the lid to the bin. The material was at times under substantial air pressure having been transported from the milling machines to the catch bins.
6. During his regular shifts, the plaintiff was exposed to extremely dusty conditions from the ground material and at times would have to open the door of the building to get fresh air. The dust exposure was such that at the end of each shift, he would need an air hose to blow his clothes clean of the dust. The plaintiff was also required to use the air hose to clean and remove dust from the machines and equipment on a regular basis. The machines and equipment used in the processing of the fine ground rock would from time to time develop leaks, and dust would be blown into the building where the plaintiff was working. He would often stop these leaks by using a cloth. There were dust collectors located in the plaintiff's work area that would malfunction from time to time causing large amounts of fine-ground material to be discharged in the building. At times, the plaintiff would have to shovel this material to clean the area and wash down the floor with a water hose. By the end of each shift, the fine ground material would accumulate in observable amounts on the plaintiff's nose, ears, and face.
7. The plaintiff began to develop breathing problems in 1992 that became progressively worse and required hospitalization in early 1995. On or about April 24, 1995, the defendant-employer moved plaintiff to the filtration plant as a result of his breathing problems. The filtration plant processed the waste material from various areas of the facility. The plaintiff's *Page 5 
exposure to dust in the filtration plant was reduced, but his breathing problems continued to worsen.
8. In March of 1999, plaintiff was admitted to Watauga Medical Center in Boone, North Carolina, after a syncopal episode. He was evaluated there for severe lung disease and systemic melanoma unrelated to his lungs. While hospitalized at that time, chest X-rays taken revealed diffuse reticular nodular patterns in both lungs. CT scans performed at that time revealed interstitial fibrosis with pulmonary emphysema. While hospitalized, the plaintiff came under the care of Dr. Robert C. Snyder, a specialist in internal medicine and the treatment of pulmonary diseases.
9. Dr. Snyder examined plaintiff for his breathing problems on March 18, 1999, at the request of the plaintiff's oncologist, Dr. Gray. Plaintiff informed Dr. Snyder at that time that he had been exposed to silica dust while working as a fine grind operator for the defendant-employer. Plaintiff also told Dr. Snyder that he smoked approximately two packs of cigarettes per day, but had cut down to ¾ of a pack per day over the preceding year. After an examination of the plaintiff, Dr. Snyder was of the opinion that the plaintiff was suffering acute respiratory failure due to low oxygen content caused by a form of pneumoconiosis, probably silicosis, as a result of his exposure to dust at work.
10. Plaintiff's chest X-ray was read by Dr. Geldmeyer, a radiologist. Dr. Geldmeyer concluded that plaintiff's X-ray was suggestive of silicosis. Plaintiff also had CT scans performed and read by Drs. Vance and Cornella, who are both radiologists. Dr. Vance reported that the CT scan revealed interstitial fibrosis with non-uniform pulmonary emphysema and small mediastinal and right pilar lymphoadenophaty. Dr. Cornella reported that his review of the CT scan revealed extensive emphysematous changes which may be seen as related to silicosis as well as other *Page 6 
entities. Thus, the radiologists were unable to conclusively find that the plaintiff's pulmonary condition was silicosis.
11. Dr. Snyder treated the plaintiff from March 18, 1999, through May 2001 for his pulmonary problems. Dr. Snyder was of the opinion that the plaintiff was suffering from severe impairment of pulmonary function as a result of pneumoconiosis and silicosis. Dr. Snyder based his opinion on the plaintiff's history of exposure to silica, the degree of his shortness of breath, his extreme low oxygen level, the consistency with fibrosis, and the fact that the X-rays and CT scans of the plaintiff's lungs confirmed the presence of fibrosis. Dr. Snyder also believed that the plaintiff's exposure to silica dust at the Feldspar Plant operated by the defendant-employer could have been causative of the pneumoconiosis and silicosis with which he believed the plaintiff suffered. Dr. Snyder was also of the opinion that even though the plaintiff had a significant history of smoking, his exposure to silica dust was a significant causing factor in the development of plaintiff's impaired pulmonary function and emphysema. Additionally, Dr. Snyder was of the opinion that the plaintiff's exposure to silica dust at the Feldspar Plant placed him at a greater risk of developing silicosis, pneumoconiosis and emphysema than members of the general public not so exposed.
12. Dr. D. Allen Hayes, who is board certified in pulmonary medicine and internal medicine, was asked to review the plaintiff's medical records, including plaintiff's X-rays. Dr. Hayes has served on the Advisory Medical Committee of the N.C. Industrial Commission, and has been a member of the Occupational Textile Disease Panel of the Commission, each for the purpose of providing expert advisement in regard to asbestos and silica claims. Dr. Hayes is also a certified "B" reader. Dr. Hayes was of the opinion that plaintiff's condition was not caused by his employment with defendant-employer. Dr. Hayes performed a "B" read on plaintiff's X-rays *Page 7 
and found the radiographic findings to be consistent with pulmonary emphysema and associated interstitial pulmonary fibrosis. Of important note, Dr. Hayes found there to be no round opacities in the upper lung zones, which would be characteristic of silicosis. In addition, Dr. Hayes noted there to be no calcification in the hilar lymph nodes, which would also be consistent with silicosis. Dr. Hayes explained during his deposition that silica particles preferentially tend to localize in the upper half of the lungs and have a round opacity. The opacities noted in the plaintiff's X-rays were of an irregular opacity and were in the lower half of each lung, which is inconsistent with and atypical of silicosis. Dr. Hayes found that the opacities noted in the plaintiff's X-rays were, in fact, consistent with obstructive lung disease related to cigarette smoking.
13. Although the plaintiff's treating physician, Dr. Snyder, was of the opinion that plaintiff suffered from silicosis that was causally related to his employment with the defendant-employer, the Full Commission gives greater weight to the opinion of Dr. Hayes, who the Full Commission finds, upon review of the record, to have significantly greater experience in diagnosing silicosis. The Full Commission gives greater weight to the opinion of Dr. Hayes in finding that plaintiff's radiographic findings do not show round opacities in the upper lung zones, which is characteristic of silicosis. Thus, the Full Commission finds that plaintiff has failed to show that his pulmonary condition is characteristic of silicosis.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
The word "silicosis" shall mean the characteristic fibrotic condition of the lungs caused by the inhalation of dust of silica or silicates (emphasis added). N.C. Gen. Stat. § 97-62. The *Page 8 
plaintiff has failed to show that his pulmonary condition ischaracteristic of silicosis when the evidence of record shows that the plaintiff's radiographic findings lack the round opacities in the upper lung zones that are characteristic of silicosis. Id. Thus, the plaintiff has failed to show that he suffers from the occupational disease of silicosis and is, thus, disabled pursuant to N.C. Gen. Stat. § 97-54.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim is hereby, and under the law must be, DENIED.
2. The parties shall pay their own costs.
This 12th day of September 2005.
S/_______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_______________________ PAMELA T. YOUNG COMMISSIONER *Page 1